UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BRENDA JOYCE HAYNES,

                           Plaintiff,

                v.

MIKE ACQUINO, WILLIAM REZABEK,
JASON WHITENIGHT, BOHDAN PAPISZ, and
JOHN SULLIVAN,

                           Defendants.
_____

**DECISION
and
ORDER**

**10-CV-355F**

(consent)

APPEARANCES:       BRENDA JOYCE HAYNES, *Pro Se*
                               11 Northumberland Avenue
                               Buffalo, New York 14215

                               TIMOTHY A. BALL
                               CORPORATION COUNSEL, CITY OF BUFFALO
                               Attorney for Defendants
                               ROBERT E. QUINN, of Counsel
                               65 Niagara Square
                               Buffalo, New York 14202

      In this civil rights action, commenced April 29, 2010, Plaintiff alleges false arrest, excessive force and malicious prosecution against Defendants, police officers with the City of Buffalo Police Department. As relevant here, on February 3, 2009, Plaintiff was arrested when Defendants, on routine patrol, observed Plaintiff at a bus stop ("the bus stop") on East Ferry Street in Buffalo, New York, screaming and yelling obscenities. When Plaintiff refused Defendants Acquino and Rezabek's order to approach the patrol vehicle and provide identification, Defendants Acquino and Rezabek exited the vehicle and instructed Plaintiff to place her hands on the patrol vehicle, advising Plaintiff was

suspected of disorderly conduct.[1]  Plaintiff then, while attempting to produce identification, pulled crack cocaine from her pocket, smashing it on the patrol vehicle.  When Plaintiff pulled the crack from her pocket, one of the officers observed a crack pipe in Plaintiff's pocket, and then arrested Plaintiff, charging her with two counts of Criminal Possession of a Controlled Substance in the Seventh Degree (New York Penal Law ("N.Y. Penal Law") § 220.03) ("Criminal Possession charges"), and one count each of Obstructing Governmental Administration in the Second Degree (N.Y. Penal Law § 195.05) ("Obstruction charge"), Disorderly Conduct (N.Y. Penal Law § 240.20(3)) ("Disorderly Conduct charge"), and Criminal Tampering in the Third Degree (N.Y. Penal Law § 145.14) ("Criminal Tampering charge").  Plaintiff represented herself throughout the ensuing criminal proceedings in Buffalo City Court on the charges, despite repeated admonitions from Buffalo City Court Judge Joseph A. Fiorella ("Judge Fiorella"), that Plaintiff should obtain counsel or accept representation by the Public Defender.

At the conclusion of a probable cause hearing on July 16, 2009, Judge Fiorella denied Plaintiff's motion to dismiss the accusatory instrument for facial insufficiency and lack of probable cause to arrest.  (Dkt. 123-2) ("Preliminary Dismissal Decision").  Similarly, at the conclusion of a suppression hearing on September 17, 2009 ("Suppression Hearing"), Judge Fiorella denied Plaintiff's motion to suppress the crack cocaine and crack pipe.  (Dkt. 123-3) ("Preliminary Suppression Decision").  In a decision dated December 22, 2009 (Dkt. 123-4) ("Dismissal Decision"), Judge Fiorella reconsidered, *sua sponte*, his July 16, 2009 Preliminary Dismissal Decision denying Plaintiff's motion to dismiss the accusatory instrument, and dismissed the Obstruction,

---

[1] Defendants Whitenight, Papisz, and Sullivan provided back-up after Plaintiff's initial contact with Officers Acquino and Rezabek by assisting in Plaintiff's arrest.

Disorderly Conduct, and Criminal Tampering charges for facial insufficiency of the accusatory instrument. As particularly relevant here, Judge Fiorella dismissed the Disorderly Conduct charge for want of any allegation that Plaintiff "specifically annoyed, disturbed, or interfered with any member of the public," and the information's failure to allege that Plaintiff's "conduct actually annoyed anyone," such that the proscribed conduct could not be "of public rather than individual dimension." Dkt. 123-4 at 3-4. The Dismissal Decision, however, did not address the validity of the warrantless arrest of Plaintiff on February 3, 2009. In another Decision, also dated December 22, 2009 (Dkt. 123-5) ("Suppression Decision"), Judge Fiorella rescinded the September 17, 2009 Preliminary Suppression Decision, determining Defendants were without probable cause to arrest Plaintiff on February 3, 2009, for disorderly conduct because Plaintiff, when initially seized, *i.e.*, in complying with the officers' request to provide identification, was not suspected of any criminal activity, but only of a disorderly conduct violation for which probable cause was lacking, and suppressed the subsequent discovery of the crack cocaine and crack pipe. Dkt. 123-5.

On January 21, 2010, the Suppression Decision was appealed to County Court of Erie County ("Erie County Court") ("Suppression Decision Appeal"), Dkt. 123-6 at 4, and in an August 20, 2010 Memorandum Decision and Order ("Appeal Decision") (Dkt. 23-7), was reversed by Erie County Court Judge Sheila A. DiTullio ("Judge DiTullio"). In particular, Judge DiTullio found that in holding the police lacked probable cause to arrest Plaintiff for disorderly conduct, Judge Fiorella erroneously relied upon New York Criminal Procedure Law ("N.Y. Crim. Proc. Law") § 140.50, pertaining to temporary questioning upon reasonable suspicion that a crime has been or is about to be

3

committed, rather than N.Y. Crim. Proc. Law § 140.10(1)(a) and (2)(a), permitting a warrantless arrest for disorderly conduct when committed in the officers' presence. Appeal Decision at 1-2. Because the Suppression Hearing testimony established Defendant Buffalo Police Officers ("police officers") Michael Acquino ("Acquino"), and Michael Rezabek ("Rezabek"), observed Plaintiff shouting obscenities while at the bus stop loud enough to catch the attention of the police officers "and others in the vicinity," *id.* at 2, Judge DiTullio found the police officers had probable cause to arrest Plaintiff under N.Y. Crim. Proc. Law § 140.10(1)(a) and (2)(a), for disorderly conduct, despite lacking any suspicion that Plaintiff had committed or was about to commit a felony or misdemeanor, such as possession of narcotics and related paraphernalia, as required to justify stopping Plaintiff and making an inquiry pursuant to N.Y. Crim. Proc. Law § 140.50. *Id.* Judge DiTullio further held that "absent a specific finding by the [lower][2] court that the officers' testimony was not credible and that they had not observed a violation level offense, [Plaintiff's] arrest and the items seized incident thereto should have been deemed lawful." *Id.* at 3. Accordingly, the Suppression Decision was reversed. *Id.*

While the Suppression Decision was pending on appeal in Erie County Court, Plaintiff, on April 29, 2010, commenced the instant § 1983 action *pro se*. Discovery ensued with Plaintiff filing on October 6, 2011, a motion to compel responses to discovery requests and for sanctions, which Defendants never opposed and which was granted by the undersigned at oral argument on December 5, 2011. Dkt. 28. Unsuccessful settlement discussions were held and, on October 27, 2012, Plaintiff

---
[2] Unless otherwise indicated, bracketed material has been added.

4

moved for summary judgment (Dkt. 35), which was denied by District Judge William M. Skretny on January 22, 2014 (Dkt. 45). On July 10, 2014, a notice of appearance of counsel on Plaintiff's behalf was filed by Brian J. Bogner, Esq. (Dkt. 51), and further mediation was pursued at which Bogner represented Plaintiff. On March 4, 2015, jury trial was scheduled for September 23, 2015, (Dkt. 66), and on March 9, 2015, the parties consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned. (Dkt. 68). On September 2, 2015, a notice of appearance of counsel on Plaintiff's behalf was filed by Frank L. LoTempio, III, Esq. (Dkt. 69).

On September 8, 2015, the parties filed pretrial statements. (Dkts. 71 and 72). On September 15, 2015, the parties appeared for a final pretrial conference, (Dkt. 75), and LoTempio was substituted for Bogner as Plaintiff's counsel. (Dkt. 76). Prior to trial the undersigned, on September 16, 2015, granted Defendants' motion *in limine* seeking to preclude from evidence the Suppression Decision in which Judge Fiorella found a lack of probable cause for Plaintiff's arrest on the underlying criminal charges (Dkt. 77) ("September 16, 2015 Decision"). The scheduled trial was adjourned at the parties' request to allow the parties to continue mediation. (Dkt. 78). Mediation continued and on April 5, 2016, a final pretrial conference was held at which LoTempio moved to withdraw as Plaintiff's counsel. Dkt. 84. The undersigned granted the motion without Plaintiff's objection and Plaintiff proceeded *pro se*, despite the undersigned's informing Plaintiff trial could be adjourned while Plaintiff sought new counsel. *See* Dkt. 85-1 ¶¶ 14-15, 22-23 (memorializing that after LoTempio was permitted to withdraw as Plaintiff's counsel, the trial was adjourned for thirty days, at Plaintiff's request, to permit Plaintiff to retrieve her file from LoTempio and seek new counsel). Plaintiff stated she was waiting

5

to hear from some attorneys she had contacted for possible representation, but was ready to try the case *pro se*. Plaintiff was unable to find new counsel and on June 1, 2016, trial was scheduled for June 7, 2016. (Dkt. 87).

Following a four-day jury trial, on June 10, 2016, the jury returned a verdict in favor of all Defendants and, based on Special Interrogatories completed by the jury on the existence of Defendants' probable cause to arrest Plaintiff and Defendants' use of reasonable force, the undersigned, by Decision and Order filed June 14, 2016, found Defendants were entitled to qualified immunity on all claims, and dismissed the claims on that ground (Dkt. 100) ("June 14, 2016 Decision"). Judgment in favor of all Defendants based on the verdict also was entered on June 28, 2016 (Dkt. 102).

Plaintiff filed an appeal to the Second Circuit Court of Appeals. In a Summary Order filed August 24, 2017 (Dkt. 111) ("Second Circuit's Mandate"), the Second Circuit found the undersigned's determination that the City Court Order, *i.e.*, the Suppression Decision, was not entitled to preclusive effect was correct, yet found legal error insofar as the Suppression Decision was precluded under Fed.R.Evid. 403 because the undersigned found the decision was inadmissible, and vacated and remanded the matter to this court for further proceedings. At a scheduling conference held September 21, 2017, the undersigned, in accordance with the Second Circuit's Mandate, inquired whether Plaintiff would like the court to assign counsel, but Plaintiff declined assigned counsel stating she would proceed *pro se*. (Dkt. 114). By Order entered September 25, 2017 (Dkt. 115), a new trial was scheduled for January 16, 2018. On November 29, 2017, Plaintiff filed a petition for a *writ of certiorari* with the United States Supreme Court

6

seeking review of the Second Circuit's determination that the Suppression Decision was not entitled to preclusive effect.

On December 6, 2017, Plaintiff filed a motion for summary judgment (Dkt. 116), which the undersigned denied on December 11, 2017 (Dkt. 117). On December 20, 2017, Plaintiff filed an interlocutory appeal (Dkt. 119), challenging the denial of summary judgment, but did not seek to stay proceedings pending resolution of her interlocutory appeal.

On January 9, 2018, Defendants filed a motion *in limine* to alter judgment (Dkt. 123) ("Defendants' Motion *in Limine*"), again seeking an order precluding from evidence on retrial the Suppression Decision, requesting the undersigned reconsider the Suppression Decision in accordance with the Second Circuit's Mandate and, assuming the court would, upon reconsideration, adhere to its September 16, 2015 Decision of preclusion, reinstate the court's June 28, 2016 order finding Defendants qualifiedly immune from liability on all of Plaintiff's claims, dismissing the claims and reinstating the judgment for Defendants. By motion filed January 9, 2018 (Dkt. 125), Plaintiff moved to stay the court's decision on Defendants' Motion *in Limine*, which was granted by Decision and Order dated February 1, 2018, because the court's decision on Defendants' Motion *in Limine* could be affected by a decision of the Supreme Court or the Second Circuit. (Dkt. 130). On January 23, 2018, Plaintiff filed her Objection to Defendants' Dispositive Motion *in Limine* (Dkt. 128) ("Plaintiff's Response").

On February 20, 2018, the Supreme Court denied Plaintiff's petition for *writ of certiorari*. *Haynes v. Acquino*, __ U.S. __; 138 S.Ct. 989 (2018). On April 27, 2018, the Second Circuit denied Plaintiff's interlocutory appeal (Dkt. 131). On May 14, 2018,

7

Plaintiff's petition for rehearing was denied by the Supreme Court. *Haynes v. Acquino*, __ U.S. __; __ S.Ct. __; 2018 WL 2186309 (May 14, 2018). Because the resolution of both matters on which the stay was predicated obviates the need for the stay, the stay is hereby VACATED and the court now addresses Defendants' Motion *in Limine*.

On appeal from the trial, the Second Circuit found the undersigned erred by deeming irrelevant and redacting the Suppression Decision ruling, and by analyzing the admissibility of the ruling's probable cause determination on the Disorderly Conduct charge under Fed.R.Evid. 403 ("Rule 403"), without adequately considering its probative effect. Second Circuit Mandate at 3-4. Even assuming, *arguendo*, the probable cause determination in the Suppression Decision was relevant and thus admissible as found in the Second Circuit's mandate under Fed.R.Evid. 401, it was properly excluded under Rule 403 because its probative value was substantially outweighed by the danger of unfair prejudice to Defendants.

Specifically, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403. "The trial court has broad discretion in determining whether proffered evidence should be admitted." *Zurich American Ins. Co. v. ABM Industries, Inc.*, 397 F.3d 158, 172 (2d Cir. 2005) (citing *United States v. Robinson*, 560 F.2d 507, 514-15 (2d Cir. 1977)).

In the instant case, although on December 6, 2010, Judge Fiorella granted Plaintiff's motion for a trial order of dismissal, finding a lack of probable cause to arrest Plaintiff for disorderly conduct on February 3, 2009, because no one else was present at

the bus stop at the time of the arrest, Dkt. 123-8 ("December 6, 2010 Criminal Court Decision"), at 2, Plaintiff, for the first time in connection with this action brought this final dismissal of the criminal charges to the court's attention by filing a copy of the December 6, 2010 Criminal Court Decision on December 6, 2017 (Dkt. 116 at 12 and 16-19), *after* the June 2016 trial, and *after* the Second Circuit remanded the matter on appeal.[3] Insofar as the Second Circuit Mandate may have been based on the December 6, 2010 Criminal Court Decision in which Judge Fiorella dismissed the remaining possession claims against Plaintiff on the basis that her arrest for disorderly conduct was without probable cause because Defendant Officer Rezabek testified at the Suppression Hearing that no one else was present requiring, as Judge Fiorella determined, suppression of the evidence, *i.e.*, the crack cocaine and crack pipe recovered incident to the arrest, Dkt. 123-8 at 2, the presence of others is not, under New York law, an element a disorderly conduct offense.[4] *See People v. Baker*, 984

---

[3] Although the Second Circuit mandate references the subsequent December 6, 2010 Criminal Court Decision dismissing the criminal prosecution against Plaintiff after Judge DiTullio's August 20, 2010 Decision, Mandate at 3, whether Plaintiff presented the December 6, 2010 Criminal Court Decision to the Second Circuit on appeal is not indicated in the record, but it certainly was not presented to the court before the court rendered its September 16, 2015 Decision on Defendants' *in limine* motion or the trial. Further, Plaintiff, in support of her motion for leave to file a supplemental complaint, filed February 23, 2011 (Dkt. 5), mentions the dismissal of the criminal charges on December 6, 2010, pursuant to a trial order of dismissal, Dkt. 5-1 ¶ 9, but does not indicate the reason for the trial order of dismissal and none of the grounds for such trial order of dismissal pursuant to N.Y. Crim. Proc. Law § 290.10 are evident from the December 6, 2010 Criminal Court Decision. The dismissal of the criminal charges against Plaintiff, however, was not further appealed by the prosecuting Erie County District Attorney, and Defendants to this action had no standing to do so.

[4] Under relevant New York law,

> A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:
> * * *
> 3. In a public place, he uses abusive or obscene language, . . . .

N.Y. Penal Law § 240.20[3].

N.E.2d 902, 905-06 (N.Y. 2013) ("We have clarified that the risk of public disorder does not have to be realized but the circumstances must be such that defendant's intent to create such a threat (or reckless disregard thereof) can be readily inferred." (citing *People v. Weaver*, 944 N.E.2d 634, 636 (N.Y. 2011) ("there is no per se requirement that members of the public must be involved or react to the incident. Rather, the attention generated by a defendant's activities, or the lack thereof, is a relevant factor to be considered in the public dimension calculus.")). Moreover, although Defendant Rezabek testified at the September 17, 2009 Suppression Hearing that no other persons were present at the bus stop, Dkt. 123-3 at 28, Rezabek also testified others were present in the general vicinity, *id.*,[5] as did Acquino, *id.* at 4,[6] which is enough to

---

[5] As relevant, at the September 17, 2009 Suppression Hearing, Rezabek testified upon cross-examination by Plaintiff, representing herself, as follows:

> Q.   . . . . Isn't it true that when you first - - when I got to the bus stop you guys rode up on me?
> A.   When we rode up on you you were at the bus stop, and you were screaming and yelling.
> Q.   What was I screaming and yelling?
> A.   I do not recall the specific words, but you were making a large nuisance.
> Q.   Did you - - was anybody else at the bus stop with me?
> A.   Not at the bus stop in particular, but there were people on East Ferry and there were people on Moselle in the general vicinity.
> Q.   Moselle and East Ferry? You know how far Moselle and East - - how far is Moselle and East Ferry from Cambridge and East Ferry?
> A.   I don't know off hand, but I know that they're very close.

Dkt. 123-3 at 28.

In the City of Buffalo, New York, the intersection of East Ferry and Moselle Streets is approximately 500 feet from the intersection of East Ferry and Cambridge, *see, e.g.*, Google Maps, available at http://google.com/maps/dir/, a fact of which the court takes judicial notice. *See Brisco v. Ercole*, 565 F.3d 80, 83 n. 2 (2d Cir. 2009) (taking judicial notice of distance established by internet mapping service).

[6] In particular, Acquino testified as follows:

> Q.   Were there other people around?
> A.   Yes.
> Q.   Were they being disturbed by this?
> A.   Yes.

Dkt. 123-3 at 4.

10

sustain an arrest for disorderly conduct. *Baker*, 984 N.E.2d at 905-06 (citing *Weaver*, 944 N.E.2d at 636).

Significantly, despite Judge DiTullio's specific admonition on appeal that "absent a specific finding by the [lower] court that the officers' testimony was not credible and that they had not observed a violation offence, [Plaintiff's] arrest and the items seized incident thereto should have been deemed lawful," Appeal Decision at 3, Judge Fiorella, in his December 6, 2010 Criminal Court Decision (Dkt. 123-8), did not find any Suppression Hearing testimony was untruthful, but limits his lack of probable cause determination on Rezabek's testimony that no others were present at the bus stop when Plaintiff was encountered on February 3, 2009, despite both Acquino and Rezabek's consistent Suppression Hearing testimony that others were "in the general vicinity." *See* Dkt. 123-3 at 4 (Acquino testifying "other people" were "around" and "were being disturbed" by Plaintiff's conduct), and 28 (Rezabek testifying nobody else was "at the bus stop in particular, but there were people on East Ferry and there were people on Moselle in the general vicinity"). That Judge Fiorella did not consider the veracity of Rezabek's testimony is established by Judge Fiorella's explicitly determining there was no probable cause for Plaintiff's arrest because Plaintiff was arrested for disorderly conduct despite the fact that "there was no one at the bus stop where [Rezabek] made this arrest." 123-8 at 2. Notwithstanding Judge Fiorella's apparent failure, in the December 6, 2010 Criminal Court Decision, to abide by Judge DiTullio's direction in the Appeal Decision that "absent a specific finding that the officers' hearing testimony was not credible and that they had not observed a violation offense, defendant's arrest and the items seized incident thereto should have been deemed lawful," Dkt. 123-7 at 3, the

11

December 6, 2010 Criminal Court Decision was not appealed, and because Defendants were not parties to Plaintiff's criminal action, Defendants were without standing to bring such an appeal.[7] Moreover, it is basic that a reversed decision, like the Suppression Decision which was the subject of this court's September 16, 2015 Decision precluding admissibility of the December 22, 2009 Suppression Decision, is a nullity and without any effect. *Cf. Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996) (reversed decision is null and void such that district court erred in relying on reversed conviction as evidence of probable cause). Significantly, "courts have determined that the prejudice to defendants in admitting a prior judicial decision significantly outweighed the prior decision's probative force." *See Brundidge v. City of Buffalo*, 79 F.Supp.2d 219, 223 n. 2 (W.D.N.Y. 1999) (ambiguous state criminal determination of defendants' lack of probable cause for plaintiff's arrest and search under Fourth Amendment standards not probative in plaintiff's § 1983 action and properly excluded under Rule 403) (citing *Carter v. Burch*, 34 F.3d 257, 265 (4th Cir. 1994)).

In this case, the court therefore correctly determined that where the merits to be determined by the jury heavily depended on the jury's evaluation of the credibility of Plaintiff's and Defendants' conflicting testimony, as Plaintiff at trial agreed, admitting Judge Fiorella's flawed Suppression Decision, which failed to make findings with respect to Acquino and Rezabek's credibility, to bolster Plaintiff's unlawful arrest claim as a purported finding in Plaintiff's criminal case by another judicial officer would have resulted in severe prejudice to Defendants that could not be mitigated even by a limiting

---

[7] Although *Baker* was decided in 2013, the Court of Appeals relied on *Weaver*, which was decided on February 10, 2011, a mere two months after the December 6, 2010 Criminal Court Decision, such that had the December 6, 2010 Criminal Court Decision been appealed up to the Court of Appeals, the decision from New York's highest court would have been handed down after *Weaver* was decided.

12

instruction, and given its lack of legal status, as a result of Judge DiTullio's reversal on appeal, such prejudice would necessarily outweigh its limited probative value.  *See Brundidge*, 79 F.Supp.2d at 223 n. 2 (citing *Carter*, 34 F.3d at 265).  Such risk is especially apparent in this case where Judge Fiorella's Suppression Decision made no finding with respect to Officers Acquino and Rezabek's credibility.[8]

That jurors are especially sensitive to judicial determinations is a well-recognized fact of trial litigation.  *See Carter*, 34 F.3d at 265 ("'[J]udicial findings of fact 'present a rare case where, by virtue of their having been <u>made by a judge</u>, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice.'" (quoting *Nipper v. Snipes*, 7 F.3d 415, 418 (4th Cir. 1993) (quoting *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 505 F.Supp. 1125, 1186 (E.D.Pa. 1980)))) (underlining added).  Such is particularly true where, as in this case, Judge Fiorella's Suppression Decision "decided the precise issue," *i.e.*, Defendants' alleged lack of probable cause to arrest Plaintiff, in Plaintiff's action against Defendants.  *Id*.

Therefore, based on the record before the court at the time of the June 2016 trial, which did not include Judge Fiorella's December 6, 2010 Criminal Court Decision granting Plaintiff a trial order of dismissal for lack of probable cause supporting Plaintiff's February 3, 2009 arrest for disorderly conduct, incident to which the crack cocaine and crack pipe were discovered, the prejudicial effect of the legally null Suppression Decision, if admitted into evidence as Plaintiff requested, upon the jury on Plaintiff's false arrest claim, had it been admitted, would have outweighed its probative value.

---

[8] Although not discussed in the September 16, 2015 Decision as a ground for preclusion, Judge Fiorella's reversed December 22, 2009 Suppression Decision is inadmissible hearsay.  *Carter*, 34 F.3d at 265 (holding judge's letter opinion and related testimony regarding grant of habeas corpus did not qualify under the hearsay exception for public records in subsequent civil right action).

13

Under Rule 403, the Suppression Decision, the only decision Plaintiff sought to be admitted into evidence, thus was correctly excluded from evidence. Accordingly, Defendants' Motion is GRANTED; the court's prior June 14, 2016 Order on qualified immunity, as well as the June 28, 2016 Order dismissing the remaining causes of action, and the Judgment for Defendants based on the jury's determination of the merits are REINSTATED.

## **CONCLUSION**

Based on the foregoing, Defendants' Motion to Alter Judgment (Dkt. 123) is GRANTED; the Court's prior June 14, 2016 Order on the issue of Defendants' qualified immunity; the June 28, 2016 judgment dismissing Plaintiff's remaining causes of action and the Judgment for Defendants are REINSTATED. Any appeal of this Decision and Order to the United States Court of Appeals for the Second Circuit, New York, New York, must be filed within thirty (30) days of the date of judgment in accordance with Fed.R.App.P. 4(a)(1)(A). A notice of appeal must be filed with the Clerk of this District Court as required by Fed.R.App.P. 3(a)(1). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3) and Fed.R.App.P. 24(a)(3)(A), that any appeal from this Decision and Order would not be taken in good faith, and therefore the court denies leave to appeal as a poor person. *Coppedge v. United States*, 369 U.S. 438, 445-46 (1962). Any application for leave to appeal *in forma pauperis* must be made to the Second Circuit Court of Appeals in accordance with Fed.R.App.P. 24(a)(1), (4) & (5). The Clerk of the Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: June 26, 2018
Buffalo, New York